[No. 10183.    Department Two.    April 28, 1913.]

FRANK McCONAUGHY, *Receiver etc.*, *Respondent*, v. E. T.
JUVENAL *et al.*, *Appellants.*[1]

INSURANCE—GUARANTY—CONSIDERATION—ESTOPPEL.  The subscrib-
ers to a guaranty contract, intended to give a mutual fire insurance
company a financial standing and to aid agents in writing insurance,
guaranteeing certain fire losses of the company, are estopped to assert
that the guaranty was void for want of legal consideration, where it
was extensively exploited for the purpose of securing business, its
purpose was apparent on its face, and it induced the insurance
written.

BILLS AND NOTES—CONSIDERATION—VALIDITY—INSURANCE—SECUR-
ITY FOR POLICY HOLDERS—VOID NOTES.  Where the insurance commis-
sioner, without authority of law, permitted a mutual fire insurance
company to unlawfully continue in business upon giving as security
the notes of certain persons interested in the company, the notes
are without consideration and void, and not an asset of the company.

INSURANCE—GUARANTY—RELEASE OF GUARANTOR.  Where fire in-
surance was written by a mutual company upon the faith of a guar-
anty fund subscribed for the payment of fire losses, the company
cannot release any of the subscribers to the fund after the policies
were written, nor could a guarantor set up a counterclaim thereto.

APPEAL—RECORD—REVIEW.  Error in entering judgment against
a defendant who, after trial, had been discharged as a bankrupt,
cannot be assigned on appeal where there is nothing in the record to
show the fact, or that it was called to the attention of the trial court.

Appeal from a judgment of the superior court for Walla
Walla county, Brents, J., entered August 3, 1911, upon
findings in favor of the plaintiff, after a trial on the merits
before the court without a jury, in an action on contract.
Affirmed.

*William E. Richardson*, for appellants.

*Rader & Barker*, for respondent.

ELLIS, J.—The receiver of the Inland Fire Insurance Com-
pany brought this action against the defendants upon a

[1]Reported in 131 Pac. 851.

written instrument designated as a guaranty fund contract. That instrument is as follows:

"This agreement made this 25 day of April, 1907, between the Inland Fire Insurance Company, party of the first part, and the subscribers hereto as parties of the second part, witnesseth:

"That whereas the party of the first part is a mutual fire insurance company organized under the laws of the state of Washington and the parties of the second part are members thereof and interested in its future success and stability as a fire insurance company. Now, therefore, it is agreed by and between the parties hereto.

"1st. That each of the second parties binds himself, his heirs, administrators, successors and assigns to contribute and pay to the first party the sum of money hereto subscribed whenever by reason of extraordinary losses or for any other reason the said sum of money shall be required for the use of said first party, and the said second parties each agree to pay his *pro rata* share of any amount that shall be required of the whole amount that shall be subscribed hereto whenever for the reasons aforesaid it shall be necessary to pay the same for the use of the said first party.

"2nd. It is further agreed that each of the subscribers hereto is severally liable only for the amount subscribed hereto, and shall in no event be liable for any other amount than the amount subscribed or for the *pro rata* share thereof that may be required and called for by said first party.

"3rd. The said first party further agrees that no demand shall be made upon any of the parties of the second part for the sums subscribed by them or any part thereof, except in the event that the said sum demanded is necessary to pay losses and the said company has no other available means of raising the funds necessary to pay losses and necessary expenditures.

"4th. It is further agreed that in case any of the second parties hereto shall fail, neglect or refuse to contribute his *pro rata* share of any call or assessment made upon him in accordance with the terms of this agreement after sixty (60) days written notice thereof signed by the secretary of the first party, then and in that event all the rights and privileges of the said second party in and to the guarantee fund certificates hereto provided shall cease and determine, and said

guarantee fund certificate shall, without further notice to said certificate holder, be cancelled and a new certificate may thereupon be issued to any person selected by the board of trustees, who shall agree to the terms and sign this agreement as one of the second parties hereto.

"5th. The said first party further agrees that it will set apart for the use of the subscribers hereto an amount equal to 50% of the net profits of the said first party's business to indemnify and pay said subscribers for the risk hereby assumed. Such estimate and payment to be made on or before the first day of January in each year.

"6th. It is further agreed that a part of the consideration for this agreement is the personal honesty and responsibility of each of the second parties hereto, and the said first party will not recognize any transfer of the guarantee fund certificates herein provided for except by the consent of its board of trustees regularly entered upon its minutes.

"7th. The parties of the second part upon signing this agreement shall each receive a certificate setting forth the amount subscribed by him and referring to this agreement and the by-laws of the first party, which certificate shall be signed by the president and attested by the secretary and shall have affixed thereto the corporate seal of the first party."

The defendants, excepting George D. Needy, admitted the execution of this contract, but denied liability upon it. The defendant Needy also denied liability, and in addition thereto, pleaded a release for a valuable consideration from any liability under the agreement, and set up a counterclaim against the insurance company founded upon certain promissory notes and an open account. The cause was tried to the court without a jury. The court's findings, so far as we deem material, were in substance as follows: That the Inland Fire Insurance Company had been organized as a mutual fire insurance company under the laws of the state of Washington prior to April 25, 1907, and at the time when it passed into the hands of a receiver, was doing a general fire insurance business in this and other states; that on the 7th day of May, 1908, it was adjudged insolvent by the superior court of Walla Walla county, and the plaintiff was appointed and qualified as its

receiver, and thereafter secured authority from the court to bring this action; that on the 25th day of April, 1907, the defendants and others executed and delivered to the insurance company the guaranty fund contract, each signing for the sum of $5,000; that when that instrument was executed, it was understood by the defendants that it was to be held out and used by the insurance company as an inducement to the public to take insurance in the company; that it was so advertised by the company through its officers, agents and other persons interested therein, which fact was known to the defendants; that the defendants, at the time of signing the contract, intended thereby to become, and to have it understood by all persons who might thereafter insure in the company and become policy holders therein that the defendants had thereby become, sureties of the company severally for the payment of fire losses of such policy holders not exceeding the amounts by the defendants severally subscribed and in proportion that the sum subscribed bore to the aggregate sum of $100,000; and intended, by the advertisement of the fact that such guaranty had been created and provided, to induce policy holders to insure their properties in the company; that such insurance was effected by the policy holders in reliance upon the guaranty fund agreement; that policy holders have sustained losses in the aggregate sum of $7,-930.44; that their claims therefor have been adjusted, approved and allowed by the company and its receiver, and are valid subsisting claims against the company in the hands of its receiver, and are wholly unpaid; that the plaintiff as receiver has no available funds with which to pay these fire losses, and no available means of raising such funds, other than the guaranty fund agreement.

The court also found that the agreement was accepted and acted upon by the company, and that practically all of the insurance on the books of the company when it ceased business had been written after the execution of that instrument. Judgment was rendered against each defendant respectively

in the sum of $396.50, for the use and benefit *pro rata* of the policy holders whose claims for fire losses had been adjusted and allowed. We have examined the record with much care, and cannot say that these findings are not sustained by a fair preponderance of the evidence. If, therefore, these findings are sufficient to sustain the judgment, it must be affirmed.

The appellants earnestly insist that no cause of action was either pleaded or proved, because the guaranty fund agreement was without legal consideration and void. It is argued that the company, being a mutual fire insurance company, could make no corporate profits, and the agreement to set apart 50 per cent of the net profits to indemnify the subscribers to the guaranty fund for the risk assumed was, therefore, impossible of performance. We find it unnecessary to decide whether this position is sound or otherwise, since the court found, upon what we conceive to be ample evidence, facts which in equity should estop the appellants from questioning the validity of the agreement. The agreement was made for the purpose of giving the company an appearance of financial backing and stability which it otherwise would not have had. That it was so used by the officers and agents of the company throughout practically all of the solvent existence of the corporation is established by evidence so convincing as to leave little room for doubt. It is fairly apparent from the evidence that the various agents of the company were instructed to, and did, exploit this guaranty fund as an aid in writing insurance. That it was featured on the stationery of the company, and that the words "$100,000 Guaranty Fund" appeared in conspicuous red letters on the back of its policies, was uncontradicted. That the subscribers to the agreement did not know and acquiesce in this purpose and these uses of it surpasses belief. Its purpose was apparent upon its face, and it can hardly be conceived that business men who would subscribe such an instrument would not retain sufficient interest in its fate to learn that it was extensively advertised as an induce-

ment for business. Its success as a business getter was demonstrated by the fact that between April 25, 1907, the date of its execution, and October 11, 1907, about $2,500,000 of insurance, being practically all of the business ever done by the company, was written. On plainest principles of equity these men should now be estopped to deny their liability for fire losses falling within the terms of their undertaking.

It is also contended that there were certain notes belonging to the company which the receiver had made no effort to collect, and that since, by the terms of the contract, the available assets of the company must be first resorted to, there could be no liability upon the contract until these notes were collected and the proceeds exhausted. The history of these notes makes it evident that they were without consideration, were never assets of the company, and should have been returned to their makers. A few days before the company was declared insolvent, and long after it was in fact so, the state insurance commissioner notified the officers of the company that it would have to cease writing insurance unless it reorganized upon a stock basis or reinsured in some other company, and demanded security that one of these things would be done as a condition to a continuance of the company's license. Thereupon, certain officers of the company and persons interested therein deposited with the insurance commissioner their personal notes aggregating the sum of $15,-000. It is obvious that the insurance commissioner had no authority to permit a continuance of business on the security of these notes, and that they never in fact had that effect or resulted in any benefit to the company. No insurance was ever written because of, or on the faith of, these notes; and, in fact, within a day or two after they were executed and deposited, the company was declared insolvent and the receiver appointed. They were without valid consideration, and were never intended as, nor became, assets of the company.

The contention of the appellant Needy that he was released from the guaranty agreement by the company cannot

be sustained. It is true that the board, by resolution, sought to release him on October 11, 1907, but that was after practically all of the policies ever written by the company had been taken out. The guaranty fund contract having been represented as behind these policies, the company had no power to release any of the signers of the contract or to otherwise impair the fund as against losses covered by these policies, which had or might thereafter accrue. For the same reason, his alleged counterclaim, however good it might have been as against general creditors of the company, could not be asserted as against the beneficiaries of this guaranty fund contract. The same estoppel which prevents him from denying the validity of the contract also prevents him from asserting the release or counterclaim. The guaranty fund was not created as a security for general liabilities of the company, but for the payment of fire losses.

It is suggested that the appellant Kirk was, after trial and before the entry of the judgment in this action, discharged as a bankrupt, and that the judgment against him is therefore illegal. There is nothing in the record before us to indicate such a discharge, nor anything showing that such a discharge was ever called to the attention of the trial court.

The judgment is affirmed.

MOUNT, FULLERTON, MAIN, and MORRIS, JJ., concur.